# Poor District of Warsaw Township *versus* Poor District of Knox Township.

1. On writ of error the Supreme Court does not review the judgment of the court below on the merits, as on an appeal, but is limited to an examination of the decision on points of law and evidence which were excepted to.

2. In a proceeding by the township of A. to have a pauper removed to the township of B., where he formerly had a legal settlement, the defence was that after leaving B. the pauper acquired a legal settlement in the township of C. The plaintiffs submitted, inter alia, a point which was substantially as follows: That the pauper did not, while residing in C. township, acquire a legal settlement therein. This the

court refused, on the ground that the pauper had acquired a legal settlement in C. township by living there for over a year, in a house for which he actually paid (in work for the owner) an annual rental of more than $10. The court having made an order in accordance with this opinion, the plaintiffs took a writ of error, assigning as a reason therefor that the court erred in refusing their point on the grounds set out, without any evidence to sustain them:

*Held*, that the court below was requested to answer a question of law, and not to find the facts upon which its decision was predicated; that it had not found such facts, and therefore that there was no error before the Supreme Court upon which the court below could be reversed.

October 10th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Quarter Sessions of *Jefferson county:* Of October Term, 1884, No. 152.

This was, in the court below, an appeal by the Poor District of Knox township from an order of a Justice of the Peace directing the removal of E. H. Vanwormer and family, paupers, from Warsaw to Knox township, on the ground that they had a legal settlement in the latter township.

On the trial, before KNOX, P. J., the following facts appeared: Previous to September, 1875, Vanwormer had a settlement in Knox township; from September, 1875, to January 10th, 1882, he lived, at various times, in Limestone and Red Bank townships, Clarion county, and in Pine Creek and Warsaw townships, Jefferson county. He remained in the latter township, with his family, and became a charge on the Overseers of the Poor, who instituted proceedings before a Justice which resulted in his removal to Knox township, on the ground that he had not gained a settlement since leaving there in 1875.

From this action of the Justice the authorities of Knox township appealed, and contended that about September 1st, 1875, Vanwormer leased real estate in Limestone township, of the yearly rental value of ten dollars and upwards, and dwelt upon the same for over a year; that he paid his rent (in work) and thereby gained a legal settlement in the Poor District of Limestone township, under the Act of June 13th, 1836.

The plaintiff (Warsaw township), submitted, inter alia, the following point:

"3. That E. H. Vanwormer, the pauper named in the order of removal, did not, while residing in Limestone township, Clarion county, Pa., acquire a legal settlement therein."

This point was refused by the court in the following opinion: "We answer the plaintiff's third point in the negative for the following reasons: That after Vanwormer, the pauper, had acquired a legal settlement in the township of Knox,

[Warsaw Township *v.* Knox Township.]

and prior to the order of removal, he removed from Knox township, Jefferson county, with his family into the township of Limestone, Clarion county; leased of one Charles Burnham, of Limestone township, a dwelling house of a yearly rental value exceeding $10 ; that he entered into possession with his family and resided therein for a period of about fifteen months, Charles Burnham says less than a year, but the weight of the evidence in the case appears to establish the above time of fifteen months.   Burnham was a farmer residing on his farm.   The tenement house leased to Vanwormer appears to be on the same farm.   The pauper had a contract with Burnham to dig limestone on the shares, which it appears only occupied a portion of his time ; the rent that he agreed to pay for the dwelling house to Burnham was at the rate of $40 per annum ; total rent for the fifteen months' time occupied would amount to $50.   Burnham says that he had an account against the pauper, and that that account, including the rent, amounted to $80.

" It appears by evidence of one W. S. Trainer that the pauper during this time was working for Burnham outside of the limestone quarry, viz.: from two to three weeks, opening a coal bank, say average time fifteen days, and at another coal bank one week, making twenty-one days ; that this work was worth $1.50 per day, this amounting to $31.50.   Burnham gave the pauper credit for work done $31.28, but Burnham appears to be biased in favor of his township of Limestone. Trainer's testimony appears to be disinterested, so far as we can see.   Trainer swears that in addition to the work in the coal banks the pauper worked on the farm for Burnham as a farm hand, from time to time, but he is unable to give the number of days.   Apply the payments for work at the coal banks pro rata to the account of $80, as Burnham appears to have mingled rent and other accounts together, and neither himself nor pauper has made direct application of the payment ; and five eighths of the account being rent, we have by this process an annual payment of rent of $10 and upwards ; deduct account outside the rent, say $30, and allow the pauper a reasonable recompense for his labor on the farm for the time he would likely be engaged assisting Burnham during the busy seasons of seed time and harvest, and we would still have the payments of rent to Burnham in excess of $10 per annum.   This view of the case is further sustained by the evidence of the pauper, who says that on the fair settlement of accounts between Burnham and himself he would not owe Burnham anything.   It therefore appears that E. H. Vanwormer lost his legal settlement in the Poor District of Knox, Jefferson county, by acquiring a new one in the Poor District

[Warsaw Township *v.* Knox Townsɥᵢₚ.]

of Limestone, Clarion county, by taking a lease of a dwelling house of an annual rental value exceeding $10, in the said township of Limestone, residing thereon one year and upwards, and paying an annual rental therefor exceeding $10."

The court accordingly entered a decree that the order of removal be reversed and set aside. Whereupon the Poor District of Warsaw township took this writ of error, and filed the following assignment of error:

" The court erred in answering the plaintiff's third point in the negative, finding that E. H. Vanwormer lost his legal settlement in the Poor District of Knox township, Jefferson county, by taking a lease of a dwelling house of an annual rental value exceeding $10, in Limestone township, residing therein one year and upwards, and paying an annual rental therefor exceeding $10, without any evidence that the rent had been paid, or any authority to apply so much of Vanwormer's work thereto, disregarding an application made by the creditor and making an illegal application to the debt best secured." [Here followed the plaintiffs' third point and the answer of the court above set out.]

*Jenks* (with whom were *Clark* and *Stewart & Martin*), for plaintiffs in error. The Act of June 13th, 1836, § 10, Purd. 1154, fixes the requisites for acquiring a legal settlement in a township to be a lease of the yearly value of $10, occupation one whole year, and payment of the rent. That the pauper leased from one Burnham is not denied, but he could not, under the circumstances, have paid any rent except by appropriating to rent the value of certain work. But he owed Burnham an outside account far exceeding the value of the work. The court erred in fixing the amount of Vanwormer's debt to Burnham, exclusive of rent, at $30. The evidence showed it to be $77. Neither Vanwormer nor Burnham directed the application of the sum due for work. When no application of a fund is made by the parties, the court should apply it to the least secured debt, which in this case was the outside account: Pierce *v.* Sweet, 9 Casey 151; Garrett's Appeal, 4 Out. 597. It follows that there was no payment of rent as required by the statute.

*Conrad & Mundorff*, for defendants in error, were not heard by the court.

The opinion of the court was filed October 20th, 1884.

PER CURIAM: On writ of error we do not review the judgment of the court below on the merits as on an appeal: Lower Augusta *v.* Selinsgrove, 14 P. F. Smith 166. We are

[Foster v. Collner.]

limited to an examination of the decision on points of law and evidence which were excepted to. We do not look through the whole evidence to discover what facts may have been found. All the points on which the court below was requested to find present questions of law. It was not requested to find the facts on which its conclusions of law were based. It has not done so. There is therefore no evidence before us on which we can convict the court of error.

Judgment affirmed.